## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FREDDY PORTILLO-OSORTO,

    *Plaintiff*,

  v.

RACHEL LESLIE DANIEL,

    *Defendant*

Case No. 25-cv-1040-ABA

## MEMORANDUM OPINION

On May 14, 2021, M.L.R. reported to the Anne Arundel County Police Department that her supervisor Freddy Portillo-Osorto ("Mr. Portillo" or "Plaintiff") repeatedly demanded sex over the course of six months in 2020–2021, barricaded her in a bathroom, and raped her on two occasions (March 14 and April 30, 2021).[1] Based on that police report, as well as a written statement from a co-worker, José Melendez, Detective Rachel Leslie Daniel ("Det. Daniel" or "Defendant") filed an application for charges and arrest warrant against Mr. Portillo. A Statement of Charges was issued, charging him with rape and other offenses. About six weeks later, a grand jury returned an indictment. At a bail review hearing, Mr. Portillo conceded there was probable cause supporting the indictment. Yet he has now sued Detective Daniel, alleging that she violated his constitutional rights in her application for the criminal charges. For the following reasons, even accepting all of Plaintiff's allegations as true, the complaint does

---

[1] The parties have referred to M.L.R. by her full name. By separate order, the Court is ordering that all filings with her name be sealed, and that the parties file versions of all filings with her name redacted.

not allege facts that would establish any constitutional violation, and thus will be dismissed with prejudice.

## I.    BACKGROUND

At the motion to dismiss stage, the Court must accept all of Plaintiff's factual allegations as true and draw all reasonable inferences therefrom in Plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Here, the complaint cites and attaches a number of documents, which the Court must consider as having been incorporated into the complaint and may consider without converting the motion to one for summary judgment. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). These documents are:

| Exhibit A (ECF No. 1-3)[2] | Police report taken by Cpl. V. Hernandez of the Anne Arundel County Police Department (May 14, 2021) |
|---|---|
| Exhibit B (ECF No. 1-4) | Medical records from visit by M.L.R. to the emergency department of the Baltimore Washington Medical Center (April 29, 2021) |
| Exhibit C (ECF No. 1-5) | Statement of Charges filed with the District Court of Maryland for Anne Arundel County (September 16, 2021) |
| Exhibit D (ECF No. 1-6) | Police report taken by Det. Daniel (November 9, 2021) |
| Exhibit E (ECF No. 1-7) | Investigation Report of the Anne Arundel County Police Department Criminal Investigation Division (September 15, 2021) |
| Exhibit F (ECF No. 1-8) | Written statements by M.L.R., Mr. Melendez, and another employee (Raul Zurita), taken by Paige Martonik of DPR Construction (May 5, 2021) |
| Exhibit G (ECF No. 1-9) | Translated transcript of police interview of M.L.R. (May 31, 2021) |

---

[2] As noted above, the referenced versions of these documents are being ordered sealed.

Mr. Portillo's allegations and the documents he submits state as follows:

Mr. Portillo and M.L.R. were employees of DPR Construction who were both working at a warehouse located at 7555 Harmans Rd. Severn, MD 21144. ECF No. 11-2 at 6.[3] On or about May 14, 2021, M.L.R. "reported to the Northern District station located at 939 Hammonds Lane, Brooklyn, MD 21225 to report sexual assaults, purportedly perpetuated by Plaintiff, over a course of nearly six (6) months at their (Plaintiff and alleged victim) shared employment workplace." ECF No. 1 ¶ 11. The initial report "was taken by V. Hernandez (Officer 2476) of the Anne Arundel County Police Department as Hernandez is a Spanish speaker," like M.L.R. *Id.* ¶ 12.

As quoted in paragraph 13 of Plaintiff's complaint, M.L.R.'s allegations against Mr. Portillo that she recounted to the Anne Arundel County Police Department on May 14, 2021, were detailed, graphic, and disturbing. M.L.R. worked as part of the cleaning staff at the warehouse. *Id.* ¶ 13(vii). The record does not reveal Mr. Portillo's position, but it included "handing out employee checks." *Id.* ¶ 13(ii). M.L.R. described that in December 2020 Plaintiff began calling her and sending her text messages saying "that he was attracted to her and he would give her money for sex." *Id.* ¶ 13(i). In February 2021, M.L.R. alleged that the conduct severely escalated, including that Plaintiff, who as noted above was in charge of distributing paychecks, told M.L.R. on February 2, 2021, that "if she did not give him oral sex or anal sex he would not give her check." *Id.* ¶ 13(ii). Sometime later, Plaintiff "took her to the bathroom," "put his arm on her neck and started touching her body, on the outside of her clothing, while pining her to the

---

[3] Citations to briefs are to the ECF page numbers, which may differ from the pagination used by the parties.

wall," and left only after someone else came into the bathroom. *Id.* ¶ 13(iii). On February 18, 2021, after all workers were sent home early due to snow, M.L.R. attempted to enter her car to leave but Plaintiff "entered into her vehicle and would not get out," and when a supervisor came by, Plaintiff "attempt[ed] to conceal himself in the vehicle." *Id.* ¶ 13(iv). On March 10, Plaintiff "tried to kiss her by force" and then "began insulting her in front of all her co-workers." *Id.* ¶ 13(v). On March 14, while M.L.R. was cleaning bathrooms, Plaintiff entered the bathroom and sexually attacked her, pinning her to the wall, and "began to touch her breasts and then [Portillo] put his hand inside her pants and penetrated her vagina with his fingers." *Id.* ¶ 13(vii).[4]

On April 29, 2020, M.L.R. went to the University of Maryland hospital "because she had a mental break down from the continued sexual abuse [Plaintiff] was committing against her" and then "went to her job to file for a sex offense complaint with her Superintendent." *Id.* ¶ 13(ix). The next day, according to M.L.R.'s police report, Plaintiff again attacked M.L.R. while she was cleaning a bathroom: "After entering the bathroom, [Portillo] pulled his penis out and pulled [M.L.R.'s] hair and told her to suck his penis. [Portillo] told her that would teach her a lesson and no matter what she said they would never fire him because he was the supervisor" and then "put his penis in her mouth by force." *Id.* ¶ 13(x).

On May 5, M.L.R. made a written report to the employer. *Id.* ¶ 30; ECF No. 1-8 at 1 & 4–15. Plaintiff was fired that day. Nine days later, on May 14, M.L.R. went to the

---

[4] The medical record refers to Mr. Portillo by his second surname, Osorto. Other records hyphenate his surnames. *See, e.g.*, ECF No. 11-5 at 1. It appears that Mr. Portillo, as is typical among Latinos with multiple surnames (generally one paternal, one maternal) goes by his first surname, Portillo. *See, e.g.*, ECF No. 1-8 at 1, 2, 12, 18. Accordingly, the Court will do the same.

police department to make her report. That is when she met with Cpl. Hernandez. M.L.R. told Cpl. Hernandez that it was only after Plaintiff was fired that she felt "able to report the above incidents to the police." *Id.* ¶ 13(xi).

On May 31, 2021, a different law enforcement officer, Detective Honesto, interviewed M.L.R. *Id.* ¶ 18. M.L.R. reiterated and expanded upon her recollection of the sexual assaults, including identifying additional physical assaults and other "unwanted touching." *Id.* ¶ 19(ii)–(v). M.L.R. also alleged that Plaintiff had urged her to participate in a scheme to defraud their employer; M.L.R. declined. *Id.* ¶ 19(i).

On or about September 16, 2021, Detective Daniel—a fellow member of the Anne Arundel County Police Department with Cpl. Hernandez and Det. Honesto, who had conducted the interviews of M.L.R.—filed an application for issuance of criminal charges against Plaintiff, including charges of rape, sex offense, assault, destruction of property, false imprisonment, and harassment. *Id.* ¶ 44; *see also* ECF No. 1-5 at 7–9 (Application for Statement of Charges). The application also requested issuance of a summons or warrant. ECF No. 1-5 at 7. It is through that application that Plaintiff contends Det. Daniel violated his Fourth Amendment rights. Because Plaintiff in part contends that there was information missing from the application that Det. Daniel should have included and that, if included, would have negated a finding of probable cause, the Court will quote in its entirety Det. Daniel's factual recitation in the application:

> On 05/31/2021 at 1000hrs [M.L.R.] responded to CID located at 8666 Veterans Hwy Millersville, MD 21108. [M.L.R.] began explaining she previously worked for "DPR Construction" and identified the suspect as "Freddy Portillo." [M.L.R.] identified the workplace as a warehouse under construction located at 7555 Harmans Rd. Severn, MD.

[M.L.R.] stated in December 2020, she was assigned to work at the warehouse where Mr. Portillo worked after a "Covid" outbreak. [M.L.R.] stated initially Mr. Portillo was a "nice person." [M.L.R.] stated someone in early February of 2021 Mr. Portillo asked [M.L.R.] about her vehicle. [M.L.R.] stated he made comments alluding to improving her financial situation. [M.L.R.] stated Mr. Portillo suggested he could alter records through their employer and benefit her financially. [M.L.R.] stated she wanted no part of his scheme.

[M.L.R.] stated Mr. Portillo's attitude toward her changed dramatically. [M.L.R.] stated on 02/12/2021 there was inclement weather which prompted the warehouse to close early. [M.L.R.] stated while she was sitting in her vehicle, Mr. Portillo entered and sat in the front seat. [M.L.R.] stated Mr. Portillo refused to exit the vehicle and instructed her to drive to a hotel. [M.L.R.] stated Mr. Portillo made comments about having sexual intercourse at a hotel and added "I can help you, there's no need to prostitute." [M.L.R.] stated she did not want any kind of relationship with Mr. Portillo. [M.L.R.] stated a supervisor unknowingly knocked on her window and stated she needed to leave before the weather worsened. Mr. Portillo exited the vehicle. [M.L.R.] stated there were numerous incidents over the next couple weeks of unsolicited touching by Mr. Portillo. [M.L.R.] described the touching as him "brushing" up against her unnecessarily. [M.L.R.] stated on 03/17/2021 she wore a green tee shirt to work for St. Patrick's Day. [M.L.R.] stated she was cleaning a room in the warehouse, when she was cornered by Mr. Portillo. [M.L.R.] stated Mr. Portillo ripped her shirt and began touching her breasts under her clothing. [M.L.R.] described the touching as "skin to skin." [M.L.R.] stated she was able to break away and leave the area. [M.L.R.] stated she repeatedly asked Mr. Portillo to stop.

[M.L.R.] stated after the incident Mr. Portillo was continually insulting her in front of all the other workers on the job site. [M.L.R.] stated during this time she began asking other co-workers for assistance but could not find a resolution adding "Nobody would help."

> [M.L.R.] stated on 04/14/2021 she was instructed to clean a
> bathroom by Mr. Portillo. [M.L.R.] stated while she was in the
> bathroom Mr. Portillo entered and immediately began trying
> to pull her pants down. [M.L.R.] stated she attempted to fight
> him off while trying to keep her pants up. [M.L.R.] stated Mr.
> Portillo was pulling on her pants with such force her belt loop
> tore. [M.L.R.] stated Mr. Portillo inserted his fingers into her
> vagina. [M.L.R.] stated she was eventually able to break away
> and exit the bathroom.
>
> [M.L.R.] stated over the next several weeks she was the victim
> of constant harassment and insults at the expense of Mr.
> Portillo. [M.L.R.] stated the harassment escalated to phone
> calls in the middle of the night and included numerous
> incidents of unwanted touching. [M.L.R.] described the
> touching as "all week he touched my buttocks and breasts."
>
> [M.L.R.] stated the incidents began to affect her health.
> [M.L.R.] stated she sought medical attention on 04/29/2021
> due to her stress from the assaults and harassment by Mr.
> Portillo. [M.L.R.] stated she spoke with a coworker identified
> as "Francisco" about the assault.
>
> [M.L.R] stated on 04/30/2021 she returned to the job site and
> was again instructed by Mr. Portillo to clean a bathroom.
> [M.L.R.] stated upon entering the bathroom Mr. Portillo
> entered the bathroom and began to choke her. [M.L.R.] stated
> she began to feel "out of breath." [M.L.R.] stated Mr. Portillo
> threw her onto the ground and "took his penis out." [M.L.R.]
> stated he told her "Open your mouth." [M.L.R.] stated "I had
> no energy to defend myself." [M.L.R.] stated Mr. Portillo put
> his penis in her mouth and on her face. [M.L.R.] stated Mr.
> Portillo did not ejaculate during the incident. [M.L.R.] stated
> after several minutes Mr. Portillo exited the bathroom.

*Id.* at 8—9.

The District Court of Maryland for Anne Arundel County issued a Statement of

Charges and Arrest Warrant that same day, September 16. *Id.* at 1—6; *see also* ECF No.

11-5 at 31 (additional version of arrest warrant). Plaintiff was arrested four weeks later,

on October 14. ECF No. 1 ¶ 45. A bond hearing was held that same day, at which a District Court Commissioner ordered Plaintiff to be held without bond. *Id.*; *see also* ECF No. 11-5 at 35–36 (initial appearance report).

A grand jury returned an indictment against Mr. Portillo on November 5, 2021. ECF No. 11-5 at 16–21. In doing so, the grand jury found that there was probable cause to believe that Mr. Portillo had committed the following offenses on the following dates:

| Count | Charge | Offense date |
|---|---|---|
| 1 | Rape, Second Degree | April 14, 2021 |
| 2 | Sexual Offense, Fourth Degree | April 14, 2021 |
| 3 | False Imprisonment | April 14, 2021 |
| 4 | Assault, Second Degree | April 14, 2021 |
| 5 | Sexual Offense, Fourth Degree | March 17, 2021 |
| 6 | Assault, Second Degree | March 17, 2021 |
| 7 | Rape, First Degree | April 30, 2021 |
| 8 | Rape, Second Degree | April 30, 2021 |
| 9 | Sexual Offense, Fourth Degree | April 30, 2021 |
| 10 | Unnatural or Perverted Practice | April 30, 2021 |
| 11 | False Imprisonment | April 30, 2021 |
| 12 | Assault, Second Degree | April 30, 2021 |

Mr. Portillo filed a motion for bond on November 15, 2021. *Id.* at 53–56. The Circuit Court of Maryland for Anne Arundel County held a hearing on December 9, 2021. ECF No. 11-6 (transcript). At the hearing, counsel for Mr. Portillo conceded that there was "enough for probable cause" and that "clearly . . . it's a case that meets the no

bond status." *Id.* at 8, 11. But he argued that the evidence was sufficiently weak that the Circuit Court should grant the motion for release pending trial. *Id.* at 9.

The Circuit Court denied the motion for bond, affirming that Plaintiff remain held without bond. The court ruled as follows:

> [I]n light of the nature of the charges the Court does have concern for public safety. I also find that the information that the victim is fearful for her safety, and the fact that there have been some veiled threats made towards her are concerning to the Court.
>
> I do recognize that he remained in the area, even after he became aware that this allegation was made, but prior to his arrest. However, I think we're in a different situation now that the charges in fact have been lodged and they do carry significant penalties. So in light of that I think he poses both a flight risk and -- and a public safety concern. So the Court will keep bond the same.

*Id.* at 15–16; *see also* ECF No. 11-5 at 75 (hearing sheet).

A trial was scheduled for April 2022. Ten days before the trial was scheduled to begin, the State's Attorney's Office entered *nolle prosequi* on all charges, and Plaintiff was released from custody. ECF No. 1 ¶ 47; *see also* ECF No. 11-5 at 77 (order granting release from commitment); *id.* at 79 (criminal hearing sheet). The record does not reveal why the State's Attorney's Office decided not to pursue the charges.

Plaintiff now claims that there was insufficient evidence for charges to have been filed in the first place, and has sued Detective Daniel, alleging that she violated his constitutional rights by filing the application for criminal charges on September 16, 2021. Count 1 alleges a violation of Article 26 of the Maryland Declaration of Rights, and Count 2 alleges a violation of the Fourth Amendment of the U.S. Constitution.

The core premise of Plaintiff's theory is that there were certain "discrepancies of the timeline and events" that "should have given pause to any reasonable officer similarly situated that there may be reasons to question the veracity of the accuser." ECF No. 1 ¶ 22. For example, he points to some discrepancies in the dates on which M.L.R. reported that the alleged assaults occurred. *See id.* ¶¶ 24, 26, 27, 28. He also points to statements in some of the medical records that arguably conflicted with some of M.L.R.'s allegations, such as an April 29, 2021, hospital record stating that she "denie[d] being physically or sexually abused." *Id.* ¶ 16 (quoting ECF No. 1-4 at 3). Plaintiff also contends that the investigating officers should have had doubts about M.L.R.'s allegations because some of those allegations were not specifically mentioned in her written complaint to their employer. *See id.* ¶¶ 31–32.

Detective Daniel has filed a motion to dismiss or in the alternative for summary judgment, arguing that (1) there was sufficient probable cause to support the issuance of criminal charges, (2) the complaint does not adequately allege causation, and (3) in any event the complaint should be dismissed based on qualified immunity. ECF No. 11. Mr. Portillo has filed a brief in opposition, ECF No. 14, and Detective Daniel has filed a reply brief, ECF No. 17.

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially

plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.[5]

## III.    DISCUSSION

Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *see Mapp v. Ohio,* 367 U.S. 643, 655 (1961), the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Thus, when Detective Daniel prepared and submitted her application for criminal charges and an arrest warrant, the Fourth Amendment required, among other things, that her application be supported by probable cause.

"The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)). The probable-cause standard is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable

---

[5] Because the complaint, even with all allegations accepted as true, does not state claims on which relief can be granted, the Court need not reach Defendant's alternative argument that she should be granted summary judgment. Accordingly, the Court does not address the summary judgment standard, or whether it would be appropriate to consider a motion for summary judgment at this stage.

and prudent men, not legal technicians, act.'" *Illinois v. Gates,* 462 U.S. 213, 231 (1983) (quoting *Brinegar*, 338 U.S. at 175–76). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. At bottom, probable cause for issuance of criminal charges or an arrest warrant requires "a reasonable ground for belief of guilt," *Brinegar*, 338 U.S. at 175 (quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881)), and that "the belief of guilt [is] particularized with respect to the person to be . . . seized." *Pringle*, 540 U.S. at 371 (citing *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979)).

In addition to requiring that a warrant application contain *sufficient* information to establish probable cause, the Fourth Amendment also prohibits an affiant from making "material false statements" in such an application "deliberately or with a 'reckless disregard for the truth.'" *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Franks v. Delaware,* 438 U.S. 154, 171 (1978)). A similar standard applies to omissions: a plaintiff who, like Mr. Portillo, claims that a warrant application should have included *additional* information, must plead and prove that the affiant "omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Id.* at 627 (quoting *United States v. Colkley,* 899 F.2d 297, 300 (4th Cir. 1990)). "With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [the officer] knew would negate probable cause.'" *Id.* (quoting *Beauchamp v. City of Noblesville, Inc.,* 320 F.3d 733, 743 (7th Cir. 2003)). "A plaintiff's 'allegations of negligence or innocent mistake' by a police officer will *not* provide a basis for a constitutional violation." *Id.* at 627–28 (citing *Franks*, 438 U.S. at 171).

12

To constitute a Fourth Amendment violation, any alleged false statement or omission in a warrant application must be "material." *Miller*, 475 F.3d at 628. For an alleged false statement or omission to be "material" it must have been "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. "To determine materiality, a court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628 (cleaned up, citations omitted). "If the 'corrected' warrant affidavit establishes probable cause"—*i.e.*, if the warrant application even with an alleged false statement excised, or with an allegedly omitted statement added, still would establish probable cause—"no civil liability lies against the officer." *Id.*

Mr. Portillo does not assert the first type of Fourth Amendment claim described above: he does not contend that there were *insufficient* facts in the September 2021 application to establish probable cause. That is unsurprising, for two reasons. The first is that he conceded exactly that point while litigating the criminal case, acknowledging during a bail hearing that there was "enough for probable cause." ECF No. 11-6 at 8. The second is that there are more than sufficient facts within the September 2021 application, which is quoted in full above, to establish probable cause. In the application, under the penalties of perjury, Det. Daniel explained that M.L.R. and Mr. Portillo worked at the same warehouse, that the alleged pattern of harassment began in December 2020, that on a day in February 2021 Mr. Portillo entered M.L.R.'s car and instructed her to drive to a hotel and initially refused to leave the car, and that "over the next several weeks she was the victim of constant harassment and insults at the expense of Mr. Portillo" and that "the harassment escalated to phone calls in the middle of the night and included numerous incidents of unwanted touching." ECF No. 1-5 at 8–9. It

described the March 17, 2021, incident, when M.L.R. was "cleaning a room in the warehouse," was "cornered by Mr. Portillo," and Mr. Portillo "ripped her shirt and began touching her breasts under her clothing." *Id.* It described the incident on April 14, 2021, when while M.L.R. was cleaning a bathroom Mr. Portillo "entered and immediately began trying to pull her pants down," and "used one hand to grab her by the neck while using his other to touch her vagina under the clothing." *Id.* And it described that on April 30, 2021, Mr. Portillo, again after entering a bathroom that M.L.R. was cleaning, "began to choke her," "threw her on the ground" and "put his penis in her mouth and on her face." *Id.* at 9.

Those factual assertions, which Plaintiff acknowledges the officers obtained during the two interviews of M.L.R. (including one that lasted two hours), ECF No. 1 ¶¶ 13, 19, were sufficient to establish probable cause that Mr. Portillo had committed the charged offenses. After all, "[a] victim's 'reliable identification of her attacker' almost always suffices to establish probable cause." *English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991)). In fact, "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Torchinsky*, 942 F.2d at 262.

So Plaintiff's allegations, even accepted as true, along with the incorporated documents, establish that the allegations in the September 16, 2021 application were *sufficient* to establish probable cause. And Plaintiff does not contend that the application affirmatively misrepresented anything that Det. Daniel or her fellow officers

in the Anne Arundel Police Department learned from the investigation.[6] So where does that leave Plaintiff's claim that Det. Daniel violated the Fourth Amendment? He asserts two theories.

**First**, Plaintiff argues that Det. Daniel "*omitted* material facts from the warrant application she either new [*sic*] or with reckless disregard for the truth should have known." ECF No. 14 at 19–20 (emphasis added) (citing *Brown v. Wiita*, 7 F. App'x 275, 279 (4th Cir. 2001) and *Sanders v. Downing*, Case No. 23-cv-6823-MHC, 2025 WL 1852392 (D.S.C. May 9, 2025)). Specifically, he claims that Det. Daniel violated the Fourth Amendment because her application did not mention (1) that M.L.R.'s written statement to the company did not "allege[] any physical sexual assaults" or mention "any incident at all on the date of April 30th, 2021," and (2) that the April 29, 2021, medical record stated that she "denie[d] being physically or sexually abused." *See* ECF No. 14 at 20–21; ECF No. 1-4 at 3.

---

[6] Det. Daniel also points out that the District Court Commissioner who reviewed the application independently determined that the evidence was sufficient to establish probable cause to believe that Plaintiff committed the alleged offenses, ECF No. 1-5 at 1–4, and that a grand jury also independently determined that there was probable cause to believe that Plaintiff committed the alleged offenses, ECF No. 11-5 at 16–20. The fact that "a neutral magistrate or, in this case, commissioner, issued [an] arrest warrant" is generally a "clear[] indication" that an officer who filed a warrant application "'acted in an objectively reasonable manner.'" *Jackson v. Carin*, 128 F.4th 525, 534 (4th Cir. 2025) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). A grand jury's indictment has a similar effect. *Id.* (citing *Durham v. Horner*, 565 F.3d 183, 189 (4th Cir. 2012)). But as noted, here the Court need not reach the question of whether Det. Daniel's conduct was objectively reasonable for qualified immunity purposes, because the application did in fact contain sufficient evidence constituting probable cause and Det. Daniel did not otherwise violate Plaintiff's Fourth Amendment rights in connection with the application.

This theory fails, at minimum, on materiality grounds. As noted above, for an alleged false statement or omission to be "material" it must have been "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. And for an alleged omission, Plaintiff must show that with the allegedly omitted statement added, the application would lack probable cause. *Miller*, 475 F.3d at 628. Here, the complaint comes nowhere close. The application contained a slew of specific, detailed allegations about Mr. Portillo's actions toward M.L.R. Those factual allegations amply established probable cause. The complaint does not plausibly allege that Det. Daniel acted intentionally or with "reckless disregard" that mentioning the allegedly exculpatory information related to the workplace report or the medical record would have "negated[] probable cause." *See id.* But even if the complaint were construed to adequately allege intentionality or recklessness, the factual allegations in the complaint do not plausibly allege that the omissions were material. Even with those statements added, the application would have established probable cause to believe that Mr. Portillo had committed the alleged offenses. And the Court can readily make this determination even though this case has not proceeded past the pleadings stage, because although the court must accept as true all of Plaintiff's *factual* allegations, the question of whether Det. Daniel's application established probable cause, or whether a hypothetical application that contained the two facts that Plaintiff contends should have been included would have established probable cause, are questions of law. *Armstrong v. Hutcheson*, 80 F.4th 508, 514 (4th Cir. 2023).

This is a similar claim to the one the Fourth Circuit considered, and rejected, in *English v. Clarke*—though Mr. Portillo's claim is much weaker than the one in that case. In *English*, the victim was attacked while sleeping in her home, at night, in a room that was "pitch black." *English*, 90 F.4th at 641. Based on some of the perpetrator's

statements, the victim believed she knew who one of the perpetrators was: a friend of her son, Kewon English. *Id.* It later turned out she was wrong, and based on a DNA test the prosecutor dropped the charges against Mr. English. Mr. English argued that the circumstances surrounding the victim's identification of him were murky, and that there were "some inconsistencies between [the victim's] four accounts," and thus "the victim's identifications were not reliable enough to establish probable cause." *Id.* at 646–47. But those "inconsistencies [were] minor and understandable given the trauma that the victim recounted experiencing," *id.*, and "the victim identified English as her attacker to law enforcement and others with enough specificity that the officers could reliably find the right individual." *Id.* at 646.

**Second**, Plaintiff argues that the September 2021 application lacked probable cause because Det. Daniel "recklessly *failed to investigate* readily available exculpatory evidence" before filing the application. ECF No. 14 at 21 (emphasis added). He argues that in light of the supposed "discrepancies" in the evidence, and given that M.L.R. was "suing the construction company for whom the Plaintiff and alleged victim both worked" at the time, Det. Daniel should have, for example, interviewed other co-workers, requested "work hours or times [*sic*] sheets," "investigat[ed] the work site," or "look[ed] for any potential cameras available for review." *Id.* at 22–23. His theory is that even if Det. Daniel had sufficient evidence to establish probable cause to obtain criminal charges, she should have *waited* to apply for criminal charges until she conducted additional investigation.

Plaintiff does not identify any legal basis supporting that theory. He cites *Savage v. Cty. of Stafford, Va.*, 754 F. Supp. 2d 809, 815–16 (E.D. Va. 2010), but in *Savage* the arrest was made without a warrant, and there were genuine *factual* disputes about what

facts the officer knew at the time; here, Plaintiff's claim turns on the validity of Det. Daniel's written warrant application. He cites *Wheeler v. Anne Arundel Cty.*, Case No. 08-cv-2361-JFM, 2009 WL 2922877, at *5 (D. Md. Sept. 8, 2009), but there Judge Motz *rejected* the plaintiff's claim that the officers had violated the Fourth Amendment by "fail[ing] to investigate relevant leads or to interview alibi witnesses." *Id.* at *5. Finally, Mr. Portillo cites *Humbert v. O'Malley*, Case No. 11-cv-440-WDQ, 2014 WL 1266673 (D. Md. Mar. 25, 2014), but in *Humbert* the evidence both at the time of the warrant application and thereafter called into serious doubt whether the person who had been arrested was the person who had committed the rape: the victim herself disclaimed any notion that Mr. Humbert committed the rape, and exculpatory DNA evidence was available within weeks of the arrest but Mr. Humbert remained incarcerated for over a year. *Id.* at *4–5. Here, the information that Mr. Portillo claims was unconstitutionally "omitted" from the warrant application was not remotely like the exculpatory evidence in *Humbert*. In short, nothing in Plaintiff's complaint or the documents incorporated therein establishes that Det. Daniel either had a duty to further investigate the crime before applying for charges to issue, or breached any such duty. To the contrary, the record, even accepting all of Plaintiff's allegations as true and drawing all reasonable inferences in his favor, establishes that Det. Daniel had probable cause that Plaintiff had committed the offenses, and otherwise complied with her constitutional obligations in applying for issuance of the charging document and arrest warrant.

For these reasons, Plaintiff's claims do not state any cognizable claim that Det. Daniel violated his constitutional rights. Mr. Portillo clearly believes that if the state had proceeded with the prosecution against him he would have been acquitted at trial. He has alleged as much in his complaint. He seems to firmly believe that M.L.R. was lying

when she made her report to their employer, and then again when she met with the investigating officers. He bases that view on what he contends are discrepancies among M.L.R.'s descriptions of his alleged criminal conduct. Some of those alleged discrepancies may have formed the basis for some potential lines of cross examination at trial, or potential arguments for why a jury should conclude that the evidence did not establish Plaintiff's guilt beyond a reasonable doubt. Indeed, as noted above, Mr. Portillo's counsel in the criminal case (the same attorney representing him in this civil case) relied on those same asserted discrepancies in seeking—unsuccessfully—to persuade the state court to grant Mr. Portillo bond during the criminal case. *See, e.g.*, ECF No. 11-6 at 6–7 & 14–15. But as Mr. Portillo conceded during that bond hearing, the evidence that the state (including Det. Daniel) relied on to request the issuance of criminal charges were sufficient to establish probable cause that Plaintiff had committed those offenses.

For these reasons, Plaintiff's federal claim (Count 2) does not state a claim on which relief can be granted. Plaintiff's state constitutional claim (Count 1) fails for the same reasons, because the Maryland courts construe Article 26 *in pari materia* with the Fourth Amendment. *State v. McDonnell*, 484 Md. 56, 78 n.9 (2023). The parties agree that the same standard applies to both of Plaintiff's claims. ECF No. 14 at 16 (Plaintiff); ECF No. 11-1 at 18 (Defendant).[7]

---

[7] Because the Court concludes that the allegations do not allege facts that would constitute a violation of the Fourth Amendment or Article 26, the Court need not and does not decide whether qualified immunity alternatively entitles Detective Daniel to dismissal of the complaint.

## IV.   CONCLUSION AND ORDER

For these reasons, the Court hereby ORDERS as follows:

1.   Defendant's motion to dismiss (ECF No. 11) is GRANTED;

2.   Plaintiff's claims are DISMISSED WITH PREJUDICE; and

3.   The Clerk of Court is directed to mark this case as CLOSED.


Date:  February 10, 2026                    _____/s/_____

                                            Adam B. Abelson
                                            United States District Judge

20